IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANETTE K. FIFE,                    :    CIVIL ACTION—LAW
                                    :
            Plaintiff               :    JURY TRIAL DEMANDED
                                    :
vs.                                 :    THE HONORABLE JUDGE
                                    :    EDWIN M. KOSIK
ALEESHA BAILEY,                     :
                                    :
            Defendant               :    NO. 3:14-CV-01716

## PLAINTIFF'S PRETRIAL CONFERENCE MEMORANDUM
### Pretrial Conference: August 31, 2015, at 1:30 p.m.

## I. STATEMENT OF FEDERAL COURT JURISDICTION

Jurisdiction is pursuant to 28 USC §1332 as there is complete diversity of citizenship and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-five Thousand Dollars ($75,000.00).

Pennsylvania law controls in this matter as the Plaintiff is a resident of Pennsylvania and the crash at issue occurred in Pennsylvania.

Venue is proper in the United States District Court of the Middle District of Pennsylvania as the Plaintiff is a resident of the Middle District of Pennsylvania and the crash at issue occurred in the Middle District of Pennsylvania.

## II. STATEMENT OF FACTS/CONTENTIONS AS TO LIABILITY

On December 17, 2012, the Plaintiff, Danette K. Fife, was operating her Kia vehicle westbound on Davis Street, Moosic, Lackawanna County, Pennsylvania, near its intersection with Montage Mountain Road. At the same time, the Defendant, Aleesha Bailey, was operating a

2013 Chrysler Town and Country minivan bearing Connecticut vehicle registration number 953-ZDE (hereinafter referred to as the "Chrysler"). The Chrysler was a rental car owned by Enterprise Rent-a-Car. Defendant was driving this Chrysler westbound in the eastbound lane of travel on Davis Street, Moosic, Lackawanna County, Pennsylvania, near its intersection with Montage Mountain Road. The Defendant, upon realizing that she was driving on the wrong side of the road, crossed over the median of Davis Street and crashed into Plaintiff's Kia, resulting in the following property damage to the Kia:



As a result of the Defendant's negligence, the Plaintiff, Danette K. Fife, suffered injuries including, but not limited to, the following:

    a.    Neck injury and pain;

    b.    Shoulder injury and pain;

    c.    Right arm injury and pain;

    d.    Right arm pain radiating to hand;

    e.    Mid back injury and pain;

    f.    Low back injury and pain;

g.      Hip pain;

h.      Leg pain;

i.      Headaches; and

j.      General loss of well-being.

As a result of her injuries sustained in the accident, Plaintiff underwent cervical neck fusion

surgery on 6/15/13. A metal plate and two screws were installed into Plaintiff's neck, as seen

below in the following cervical X-ray films from 6/16/2013:

 

The Defendant, Aleesha Bailey, was negligent in driving her vehicle on the wrong side of

the road and then correcting and driving into Plaintiff's vehicle, thereby causing the accident.

Plaintiff's counsel has requested Defendant to stipulate as to liability. Defense counsel

has refused to do so, even though there are no questions as to liability.

Defendant's bodily injury coverage limits are $250,000. The Plaintiff has demanded the third party policy limits of $250,000. The Defendant, to date, has not offered any money as settlement.

## III.   UNDISPUTED FACTS

The parties agree that the Defendant mistakenly traveled west in the eastbound lane of Davis Street before she recognized she was not in her appropriate lane of travel. The Defendant attempted to correct the situation in the face of oncoming traffic and collided with the front of Plaintiff's vehicle.

Defendant was cited by the police for moving violations, including driving on the wrong side of the road. (See Deposition of Thomas McGovern, p35 lines 12-25). Defendant stated to Officer Jenkins that she "was coming from out of state, she wasn't from the area. And that she had made a wrong turn, and she was going the wrong way because she saw headlights coming at her." (See Deposition of Officer Thomas Jenkins, p55 lines 10-14).

## IV.   DAMAGES

1.   Principal injuries sustained

Plaintiff underwent cervical neck fusion surgery on 6/15/13. Post-surgery, Plaintiff suffers from a cervical disc herniation at C5-6, right-sided cervical radiculopathy, and ongoing cervical/thoracic myofascial spasms.

Plaintiff also suffered injuries to her left shoulder, left foot, and her mid and low back as a result of the crash.

2.   Hospitalization and convalescence

Plaintiff was transported to Geisinger Wyoming Valley Hospital following the crash via Lackawanna County Ambulance. Her follow-up treatment included:

- Chiropractic and Rehabilitation Services of Dallas from 2/1/13 until 1/19/15, which included a total of 47 treatments;

- Dr. Nothstein, PAP, Intermountain Dallas, office visits;

- Dr. Paz, Comprehensive Pain Management, office visits;

- Dr. Michelle LaCroix, Geisinger, Neurosurgery; and,

- Other diagnostic tests, including MRI's and X-Ray's

To date, Plaintiff has a Geisinger private health insurance lien in excess of $33,541 for the costs it paid for Plaintiff's care. Plaintiff's PIP has paid its limits of $5,000. The Plaintiff also paid $2,180 in out of pocket costs.

3.  Present disability

Based upon Dr. Prebola's medical opinion from 6/24/14, Plaintiff's condition will worsen due to her cervical discectomy and fusion, and she can expect her condition to deteriorate to the state of total disability within a 5-year time frame (by the year 2019). Dr. Prebola further opines that Ms. Fife has already experienced a permanent partial disability and impairment, in that she has:

- A maximum lifting ability of 15-20lbs,

- Must avoid future work that includes repetitive cervical twisting and bending,

- Can expect to have permanent pain and symptomatology in the future, and;

- Must follow a sedentary or light duty work capacity level.

4. <u>Special monetary damages, loss of past earnings, medical expenses, property damages, etc.</u>

Plaintiff's current wage loss already exceeds $2,211. Additionally, Plaintiff suffered a commission loss of $817.97. Based upon Sean Hanahue's expert report, Plaintiff can anticipate a total of $800,288 in loss of future earnings capacity.

5. <u>Estimated value of pain and suffering, etc.</u>

Plaintiff's estimated pain and suffering in excess of Defendant's policy limits of $250,000 due to the neck fusion surgery and the installation of screws and a plate in Plaintiff's neck.

6. <u>Special damage claims</u>

Plaintiff makes no claim for special damages.


V.     **WITNESSES**

A.     The Plaintiff, Danette Fife

B.     The Defendant, Aleesha Bailey

C.     Dr. William Prebola, M.D.

D.     Sean C. Hanahue, MA, CDMS, CRC, BCPC, ABVE

E.     Officer Thomas Jenkins, Moosic Police Department

F.     Officer Thomas McGovern, Moosic Police Department

G.     Dr. Nothstein, PAP, Intermountain Dallas

H.     Dr. Paz, Comprehensive Pain Management

I.     Dr. Michelle LaCroix, Wilkes-Barre Geisinger

J.     Dr. Mark Morris, Chiropractor

G.     Friends, Family, and Co-Workers

## VII.   SUMMARIES OF EXPERT TESTIMONY

Dr. Prebola will testify as to his independent medical exam of the Plaintiff on 4/30/2014, attached as Exhibit A. According to Dr. Prebola's report, Plaintiff's condition will worsen due to her cervical discectomy and fusion, and she can expect her condition to deteriorate to the state of total disability, within a 5-year time frame, by the year 2019. (See Exhibit A). Dr. Prebola further opines that Ms. Fife has already experienced a permanent partial disability and impairment. In his expert report regarding future medical costs and requirements, Dr. Prebola explains that Plaintiff will require:

- 24-36 chiropractic visits a year, costing $100 to $150 a month;

- Celebrex and Flexeril medications costing a collective total of $250 a month;

- Lyrica medication costing $303.50 per month;

- Four trigger point injections on a yearly basis, costing $150 each; and,

- Six to eight physician visits on a yearly basis costing $150 each.

(See Exhibit B). Dr. Prebola will testify as to the method of examination he performed, his findings and their significance, the records he reviewed, and the Plaintiff's current and future disabilities.

According to vocational expert Sean C. Hanahue's expert report, Plaintiff can anticipate to lose a total of $800,288 in loss of future earnings capacity. (See Exhibit C). Hanahue will testify as to the method of calculation of future wage loss, the factors associated with Plaintiff's present and future disability causing her wage loss, documentation supporting his findings, and his vocational conclusion.

## VIII.   SPECIAL COMMENTS ON PLEADINGS AND DISCOVERY

As of this date, the discovery deadline has passed. However, the depositions of Plaintiff and Defendant have not yet occurred. Plaintiff's counsel has requested from Defense counsel that the depositions of Plaintiff and Defendant occur on the same day. However, Defense counsel was unwilling to comply until 8/27/2015, when counsel sent Plaintiff's counsel a letter stating that the Defendant could be available for deposition on the same day as Plaintiff via electronic means. Plaintiff demands that the Defendant appear in person for deposition.

Also, Defense counsel has noted a desire to complete an independent medical exam ("IME"), as well as a vocational evaluation. However, as of today's date, neither an IME nor a vocational evaluation has yet been scheduled by the Defendant.

Plaintiff is ready to proceed with trial and asks this Court to schedule a trial date.

## IX. SUMMARY OF LEGAL ISSUES

Whether Defendant should pay Plaintiff the policy limits in light of clear liability of Defendant driver and serious injury and medical and economic loss to Plaintiff?

Regarding causation, a tortfeasor is liable for all direct and proximate consequences of her unlawful act. Menarde v. Philadelphia Transp. Co., A.2d 681 (Pa. 1954).

1. **Damages:**

a.   Physical pain and suffering:

The Plaintiff is entitled to reasonable compensation for the pain, suffering, and inconvenience she has endured and will endure in the future. Pennsylvania Railroad Company v. Allen, 53 Pa. 276 (1866).

b.   Loss of feeling of well-being:

The Plaintiff is entitled to recover compensation for the loss of the feeling of well-being as a result of her injuries. Thompson v. Ianuzzi, 169 A.2d 777 (Pa. 1961).

    c.  Medical expenses – past and future:

The Plaintiff is entitled to be reimbursed for all medical and hospital expenses the jury believes to be reasonable under the circumstances and incurred as a result of the negligence of the Defendants. See Fisher v. Pomeroy's, Inc., 185 A. 296, 322 Pa. 389 (1936).

    d.  Income loss/loss of earning capacity

The Plaintiff is entitled to be reimbursed for loss of any and all wages sustained to present and any and all wage loss that she will sustain in the future as a result of the injuries she suffered. In addition, the Plaintiff is entitled to be reimbursed for any and all past and future impaired earning capacity as a result of the injuries she suffered. Williams v. Dulaney, 480 A.2d 1080 (Pa. Super. 1984).


## X. STIPULATIONS DESIRED

The Plaintiff requests that Defendant stipulate to liability.

The Plaintiff also seeks to stipulate to the authenticity of all medical records and bills obtained by subpoena and/or exchanged through pretrial discovery.


## XI. ESTIMATED NUMBER OF TRIAL DAYS

Three days.


## XII. EXHIBIT FORM

See attached.

Exhibit A: Expert report, IME, Dr. William Prebola, M.D.

Exhibit B: Expert report, Future Medical Costs, Dr. William Prebola, M.D.

Exhibit C: Expert report, Vocational Evaluation, Sean C. Hanahue

## XIII. SPECIAL VERDICT QUESTIONS

N/A

## XIV. DEFENSE COUNSEL STATEMENT ON SETTLEMENT AUTHORITY

See Defendant's Pretrial Memorandum

## XV. CERTIFICATE OF COUNSEL RE RULE 402.7

See attached.

[Certificate must be filed as required under Rule 402.7 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.]

## XVI. N/A

LAW OFFICE OF CEFALO & ASSOCIATES

BY: _____

MICHAEL J. CEFALO, ESQUIRE
ID No. PA 16061
Attorneys for the Plaintiff
309 Wyoming Avenue
West Pittston, Pennsylvania 18643
(570) 655-5555

# EXHIBIT A

MAY/05/2014/MON 07:32 AM   NE Rehab Transcripti     FAX No. 5702706758          P. 002/008



# Northeastern Rehabilitation
## A S S O C I A T E S , P. C.

**Physical Medicine &**
**Rehabilitation**

**Treatment Locations:**

Morgan Medical Complex
5 Morgan Highway, Suite 4
Scranton, PA 18508
(570) 344-3788
Fax: (570) 969-9280

John Heinz
Rehabilitation Campus
150 Mundy Street
Wilkes-Barre, PA 18702
(570) 824-0930
Fax: (570) 824-7755

Park Plaza
3400 Bath Pike
4th Floor, Suite 400
Bethlehem, PA 18017
(610) 954-9400
Fax: (610) 954-0333

Wayne Memorial Medical
& Professional Complex
600 Maple Avenue, Suite 3
Honesdale, PA 18431
(570) 253-1005
Fax: (570) 253-7868

**Additional Locations:**

Allentown

Bellefonte

Drums

East Stroudsburg

Etters

Glenside

Harrisburg

Havertown

Jonestown

Lancaster

Lehighton

Lewisburg

Mechanicsburg

Newport

Quakertown

Reading Area

Tamaqua

Towanda

Tunkhannock

Williamsport

www.nerehab.com

## PHYSIATRIC INDEPENDENT MEDICAL EVALUATION

**Examinee: Danette Fife**

**Date of Exam: 04/30/14**

**Date of Birth: 11/08/68**

**Date of Injury: 12/17/12**

**Referral Organization: Cefalo & Associates**

**Referring Individual: Michael J. Cefalo, Esquire**

**Claim Number: Unknown**

**Evaluating Physician: William R. Prebola, M.D.**

**Location of Evaluation: Wilkes-Barre, PA**

Danette Fife was referred for a Physiatric Independent Medical Evaluation at the request of the above agent. The IME process was explained to the examinee, and understands that no patient/treating physician relationship exists and that a report will be sent to the requesting agent. Analysis is based upon the subjective complaints, history given by the examinee, review of medical records and tests provided to me, as well as results of a comprehensive history and physical examination.

History was provided by the examinee. Approximately 60 minutes were spent with the examinee. This included performing a comprehensive history and physical examination. An additional 90 minutes were spent reviewing a thick packet of medical records and preparation of the report.

## HISTORY

**Mechanism of Injury/Examinee Treatment Summary:** Danette Fife is a very pleasant, 45-year-old, white female, who was Christmas shopping on 12/17/12. She was a belted driver. She was driving along and another car pulled right out and there was a significant collision. There was no loss of consciousness, but she needed the paramedics to extricate her from the car. She was taken by ambulance to the Geisinger Hospital. She had multiple diagnostic X-rays that revealed no

RE: Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 2

fracture. I have reviewed the ambulance report of 12/17/12. She did have pain in the neck and pain in the pelvis while she was in the ambulance.

Later, she was referred to Dr. Morris for chiropractic treatment. She continued to have ongoing neck and mid back discomfort. Dr. Morris treated her conservatively. She continued to complain of neck pain and eventually a cervical MRI was performed on 04/22/13. I personally reviewed the MRI scan and there is a rather significant disc herniation at C5-6. She was having right arm numbness.

She was referred to Dr. Lacroix at the Geisinger Clinic. She had even seen Dr. Paz for pain management. Eventually, she was admitted to the Geisinger Hospital and underwent anterior cervical discectomy and fusion on 06/15/13. After the surgery, she did have some improvement of her referred right arm pain. She still had the neck pain and upper back soreness and tightness.

In the past, she has seen Dr. Nothstein.

She tells me that she cannot afford to go to see Dr. Morris for chiropractic adjustments, as these have helped. She has had modalities and myofascial stretching through his office, which have helped.

She did miss about four days of work around the time of the motor vehicle collision. She then missed about six weeks of work around the time frame of the surgery. She has now gone back to work at Pride Mobility, as she works in the sales department. She reports this is a sedentary type of job.

**Symptomatology:** She continues to have neck stiffness and soreness. She still has numbness from her right neck down into the right hand. She feels some mid back tightness and soreness.

**Aggravating Factors:** Bending and twisting at the mid back and neck cause increased discomfort. She feels a sense of weakness in her right arm.

**Relieving Factors:** She does note that chiropractic treatment has been helpful in the past. She had taken extensive pain pills in the past. In fact, she got addicted to the Oxycodone. She is just out of Marworth for detox of drugs and alcohol. She has been 72 days sober. She also reports that the surgery was helpful, performed by Dr. Lacroix.

RE: Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 3

**Subjective Tolerance Levels:** She is independent with all function. She is able to drive in the community.

**Allergies:** No known drug allergies.

**Medications:** She takes Lexapro and an occasional Motrin. She does not want to take any type of addictive drugs.

**Past Medical History:** Her past medical history is negative.

**Review of Systems:** Review of systems as above.

**Family History:** Her family history is noncontributory.

**Psychosocial History:** She has not had any drugs or alcohol in the last 72 days, since she has been discharged from Marworth. She is a single parent of three boys, ages 8, 11, and 19. She has had to cut back on her social activities. At the end of a busy day, she has significant pain in the upper back and neck with stiffness.

**Occupational History:** She works at Pride Mobility in the sales department for the last year and a half. She has to continue working, as she has to financially support her family.

## MEDICAL RECORD REVIEW

1. Lackawanna Ambulance report, dated 12/17/12.
2. E.R. records from Geisinger Hospital (Dr. Sam Saylor), dated 12/17/12.
3. Chiropractic records from Chiropractic Rehab Associates of Dallas (Dr. Sean Miller/Dr. Mark Morris).
4. Multiple medical records from the neurosurgery office at Geisinger Hospital (Dr. Lacroix).
5. Operative report from Dr. Lacroix, dated 06/15/13, indicating anterior cervical discectomy and fusion with plating at C5-6.
6. Cervical X-ray report, dated 06/15/13 (post-operative X-ray, indicating anterior cervical discectomy and fusion at C5-6 with anterior plating and no evidence of hardware failure.
7. Medical records from Dr. Gary Nothstein.
8. Medical records from Dr. Albert Sun, dated 01/09/14 (thyroid).
9. Cervical X-ray report, dated 12/18/12.

RE: Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 4

10. Lumbar X-ray report, dated 12/18/12.
11. Cervical MRI report, dated 04/22/13, indicating disc herniation at C5-6 with straightening of the cervical lordosis with some disc protrusion at C6-7.
12. Cervical X-ray report, dated 06/16/13.
13. Intraoperative X-ray report, dated 06/15/13.
14. Multiple records from InterMountain Medical Group including office note of 12/03/12, Dr. Nothstein.
15. Multiple medical bills and costs surrounding treatment for Danette Fife due to the motor vehicle accident of 12/17/12.
16. Medical records from Dr. Paz.

## PHYSICAL EXAMINATION

### MUSCULOSKELETAL

**General Appearance:**   A cooperative female, who gets on and off the exam table independently.

**Structural/Postural:**   She has a well-healed anterior cervical incision.   No kyphoscoliosis.

**Gait:** Gait normal with no spastic or myelopathic gait.

**Range of Motion:** Cervical range is limited to no better than 50% full motion.  She had full motion at the shoulders, elbows, and wrists with a pulling sensation in her right trapezius with right shoulder testing.

**Palpation:**  She had severe spasm in the bilateral cervical paraspinals with two large trigger points in the upper trapezius region.  She has spasm in the upper thoracic region without trigger points.

### NEUROLOGICAL

**Manual Muscle Testing:**  Normal muscle grades in both upper extremities.

**Reflexes:**  Reflexes 1+ biceps, wrist extensors, and triceps jerks.

**Sensory:**  Diminished sensation in the right C6 dermatomal pattern.

RE: Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 5


**Clinical Diagnostic Tests:** Spurling's test positive to the right, negative to the left. No atrophy in both upper extremities. No fasciculations. Speech fluent and appropriate.


## DIAGNOSTICS REVIEW

I did review the cervical MRI film of 04/22/13. There is obvious disc herniation at C5-6, which is central and to the right side. There is flattening of the cord. There are degenerative disc changes with protrusion at the C6-7 level, but no cord compression.

I reviewed the lumbar X-ray film, dated 12/18/12. I see no fracture or dislocation.

I reviewed the cervical X-ray film, dated 12/18/12. I see no evidence of fracture or dislocation.

I reviewed the actual cervical X-ray film of 06/16/13. There is post-surgical change with anterior spinal fusion at the C6-7 level. There appears to be good anatomic alignment.


## IMPRESSION

1. Motor vehicle collision of 12/17/12 causing:
   a. Cervical disc herniation at C5-6, status post anterior cervical discectomy and fusion.
   b. Right-sided cervical radiculopathy.
   c. Ongoing cervical/thoracic myofascial spasms.


## DISCUSSION

Recommendations regarding the examinee's ability to work, or participate in activities of daily living and other opinions provided in this report are given totally independently of the requesting agents. These recommendations and opinions are based upon reasonable certainty.

Danette Fife presents today for an evaluation in regards to a severe motor vehicle trauma, which occurred on 12/17/12. At that time, she suffered a significant

MAY/05/2014/MON 07:33 AM   NE Rehab Transcripti      FAX No. 5702706758                P. 007/008

RE: Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 6

cervical spine injury as a result of the motor vehicle collision. She has undergone appropriate and necessary care. She has had a cervical MRI, which revealed a rather significant disc herniation at C5-6. Clinically, she did have cervical radiculopathy. She has undergone appropriate and necessary surgical decompressive and stabilization surgery by Dr. Lacroix.

Based on my examination today, Ms. Fife continues to have ongoing cervical spine impairment with residual right-sided cervical radiculopathy as a sole result of the motor vehicle collision of 12/17/12.

Ms. Fife can expect to have permanent pain and permanent impairment in the future. At this time, Ms. Fife would benefit from ongoing conservative treatment. She has received significant benefit from chiropractic mobilization. I do believe that 24-36 chiropractic visits on a yearly basis would be reasonable to treat the myofascial spasms in the cervical/thoracic regions. These spasms are a sole result of the motor vehicle collision of 12/17/12.

In regards to future medication management, Ms. Fife does not want to take any type of narcotic/addictive potential medications. Therefore, I would recommend anti-inflammatory medications and nighttime muscle relaxers. A prescription for Celebrex 200 mg. daily would certainly be reasonable to treat the cervical injury related impairment. Nighttime Flexeril 10 mg. would certainly be reasonable to treat the myofascial spasms.

In the future, Ms. Fife would benefit from cervical/trapezius trigger point injections four times a year. She should continue to follow with Dr. Morris and Dr. Paz, her treating chiropractor and treating pain management physician. Six to eight physician visits on a yearly basis would certainly be reasonable.

In regards to future work and social activities, I believe Danette Fife does suffer permanent partial impairment and permanent partial disability. Currently, she has been working in the sales department at Pride Mobility. However, I would place permanent restrictions in the sedentary to light duty work capacity level. She has maximum lifting of 15-20 pounds occasionally and no greater than 5-10 pounds frequently. She needs to avoid a future occupation that would include repetitive cervical twisting and bending activities. These restrictions are based solely on the motor vehicle collision of 12/17/12.

RE:  Fife, Danette
Independent Medical Evaluation – 04/30/14
Page 7

For all intents and purposes, Ms. Fife will never fully recover from the injuries sustained on 12/17/12.  She can expect to have permanent pain and permanent symptomatology in the future.

In regards to future pain management for her right-sided radiculopathy, I would recommend Lyrica 75 mg. b.i.d. to help with the "nerve pain" she has been suffering since her injury of 12/17/12.

I have reviewed the medical bills and medical charges concerning the treatment rendered to Ms. Fife as a result of the motor vehicle collision of 12/17/12.  These medical charges are reasonable and necessary in regards to the treatment she received.

"I certify and affirm that the foregoing report is true to the best of my knowledge under the penalties of perjury."

William R. Prebola, M.D.
Board Certified, Independent Medical Examinations
Board Certified, Physical Medicine & Rehabilitation
Fellow, American Academy of Physical Medicine & Rehabilitation
Diplomate, American Board of Pain Medicine

WRP/kz

# EXHIBIT B

RECEIVED JUN 3 0 2014

 **Northeastern
Rehabilitation Associates, P.C.**

**150 Mundy Street
Wilkes-Barre, PA 18702
Tel: 570-824-0930  Fax: 570-824-7755**

June 26, 2014

Jlynn Yamrus
Cefalo and Associates
309 Wyoming Avenue
West Pittston, PA 18643

RE:  Danette Fife
DOB:  11/8/68

Dear Ms. Yamrus:

This correspondence outlines future medical cost projections for Danette Fife.  I reviewed my IME report of 4/30/14.  As you already know, Ms. Fife suffered a cervical disc herniation at C5-6 as well as a right sided cervical radiculopathy and ongoing cervical thoracic myofascial spasms as a sole result of her motor vehicle collision of 12/17/12.

As outlined in my prior IME report, I do believe that 24 to 36 chiropractic visits on a yearly basis would be reasonable to treat her cervical and thoracic injuries as a result of the motor vehicle trauma.  The cost of each chiropractic visit is approximately $100.00 to $150.00.  This depends on the intensity of modalities used during each visit.  In regards to future costs of her pharmacologic agents, Celebrex 200 mg daily will cost approximately $225.00 per month.  The Flexeril medication prescribed 10 mg at bedtime costs approximately $25.00 to $30.00 a month.  Generic medications are available for this pharmacologic agent.

Four trigger point injections on a yearly basis will cost $150.00 each.  Six to eight physician visits on a yearly basis will cost approximately $150.00 each.

In regards to the nerve pain medication, Lyrica, the cost of 75 mg twice a day for a month is $303.50.

As outlined in my prior report, Ms. Fife does suffer permanent impairment and disability.  She currently can work in a light duty capacity.  She needs to avoid repetitive cervical twisting and bending activities.

In the future, Ms. Fife can expect to have worsening of her cervical spine above and below the level of her cervical fusion at C5-6.  In approximately three to five years, Ms. Fife can expect

to have worsening of her physical abilities due to the fact she has had the cervical discectomy and fusion.   I believe she will progress to a state of total disability in that five year time frame.

Should you require further information, please do not hesitate to contact me

Sincerely,

*[signature]*

Electronically signed by William Prebola, MD
WP/mw

# EXHIBIT C

# PA. ADVOCATES INC.

SEAN C. HANAHUE, MA, CDMS, CRC, BCPC, ABVE
President - Director of Vocational Services

Certified Expert Case Management:
  * Workers Compensation
  * Social Security Disability
  * Personal Liability

**September 25, 2014**


**Attorney Michael Cefalo**
**Cefalo & Associates**
**309 Wyoming Avenue**
**West Pittston, PA 18643**

Re:    **Danette Fife**
DOB:   **11/8/1968**
DOI:   **12/17/12**

### Vocational Assessment

Dear Attorney Cefalo:

I appreciate the opportunity to contribute expert vocational services in the matter of Danette Fife.

Pursuant to your request for a vocational assessment in the above captioned matter, I offer the enclosed as my opinion within a reasonable degree of vocational certainty regarding Danette Fife, and specifically the impact of her 12/17/12 accident on her future vocational and economic horizons.

On 7/7/14, I had the opportunity to meet with and conduct a vocational interview with Danette Fife at her residence located in Harvey's Lake-PA. I have also completed telephonic vocational discussions with Ms. Fife on 8/1/14, 8/13/14, and 9/3/14.

In conjunction with my vocational assessment discussions with Danette Fife, I have had the opportunity to review all historical documentation pertinent to this matter. In addition, appropriate government resources and vocational materials have been utilized in developing this expert vocational opinion.

Vocational resources utilized to support my vocational opinions within this report included but are not limited to The US Department of Labor-Bureau of Wage Statistics, The Occupational Outlook Handbook 2013-2014 Edition, The Enhanced Occupational Outlook Handbook, The Dictionary of Occupational Titles (DOT), The Classification of Jobs (COJ), O*Net, the Vocational Diagnosis and Assessment of Residual Employability (VDARE), Social Security Administration research (www.ssa.gov), the PA Center for Workforce Information & Analysis, the New Guide to Occupational Exploration, and Gamboa-Gibson Work Life Tables, Determining Economic Damages: Martin & Weinstein August 2012, Economic Research Institute (ERI), and The Foundation for Forensic Vocational Rehabilitation – Robinson 2014.

Attorney Michael Cefalo
September 25, 2014
Page - 2
Re:      Danette Fife

## Vocational Methodology:

In developing my opinions within this assessment, I have utilized accepted vocational methodology which includes an in person vocational assessment of Danette Fife, the completion of a Transferable Skills Analysis, utilization of vocational research material and my extensive review and evaluation of all available medical, vocational, and financial documentation.

Documentation reviewed and utilized in developing this assessment is considered reliable and relevant information.

In evaluating Danette Fife, I have considered the vocational and occupational impact of her 12/17/12 motor vehicle accident.  Specifically, I have evaluated Danette Fife's abilities and vocational limitations.

The term "disability" can generally be defined as referring to a loss or reduction of ability.

An occupational disability can specifically be defined as:

- An occupational disability represents a loss or decrease in the ability to respond to vocational expectations as a result of impairments and functional limitations.

The affect of a vocational disability is realized when a disabled individual loses their ability to participate in the competitive labor market, or when a disabled individual working year round full time experiences a reduction in their earning abilities as compared to other individuals without a disability.

Vocational factors that are included in the assessment of an individual's disability are age, education, work history, earnings history, general learning ability, transferable skills, permanent employment status, and labor market access.

## Mechanism of Injury:

Danette Fife was injured in a motor vehicle accident which occurred on 12/17/12.  Specifically, Ms. Fife was struck on the front driver's side by another vehicle.

Ms. Fife was transported via ambulance to Geisinger Wyoming Valley Hospital where she underwent treatment for acute neck and back pain.

ER Physician, Dr. Samuel Saylor diagnosed Ms. Fife with a neck and back strain status post motor vehicle accident.

Attorney Michael Cefalo
September 25, 2014
Page - 3
Re:     Danette Fife

## Employment Status:

At the time of the 12/17/12 accident under review, Danette Fife was employed at Pride Mobility in their inside sales department for a period of one week beginning on 12/10/12.

Despite ongoing pain and discomfort, Ms. Fife indicated she was only off work for a period of 4-days following the 12/17/12 accident. Ms. Fife did return to modified work for a period of 6-months. Ms. Fife was only able to work until her cervical neck fusion surgery which occurred on 6/15/13. Ms. Fife noted that following her cervical neck surgery she was off work for approximately 6-weeks. Ms. Fife recalled returning to work on or about 7/28/13.

Since undergoing surgery in June 2013, Ms. Fife reports she has had to return to work in order to financially support her family. Ms. Fife experienced a probationary period at work due to missed time caused by ongoing pain. Ms. Fife recalled her probationary period to have occurred between October 2013 and January 2014. Ms. Fife is currently employed on a full time basis with Pride Mobility, as an inside sales representative.

## Documentation Reviewed:

In preparation for my vocational assessment meeting and subsequent research, the following documents were reviewed –

|  |  |  |
|---|---|---|
| 1. | Medical Records - Lackawanna Ambulance | 12/17/12 |
| 2. | Medical Records - Geisinger Wyoming Valley | 12/17/12 |
| 3. | Medical Records - Chiropractic & Rehab Associates of Dallas | 2/1/13-3/24/14 |
| 4. | Medical Records - Dr. Gary Nothstein, Family Physician | 4/18/13 |
| 5. | Medical Report - Dr. Joseph Paz, Pain Management Physician | 5/10/13 |
| 6. | Medical Records - Dr. Michel Lacroix, Neurosurgeon | 5/30/13-7/17/13 |
| 7. | Medical Report - Dr. William Prebola, Physiatrist | 4/30/14 & 6/26/14 |
| 8. | Diagnostic Studies |  |
| 9. | Social Security Earnings Statement | 1984-2012 |
| 10. | Wage Loss Information - Pride Mobility |  |
| 11. | Tax Record | 2013 |

Subsequent to my file review, my 7/7/14 in person vocational assessment meeting with Danette Fife, and my 8/1/14, 8/13/14, and 9/3/14 follow up vocational discussions, I offer the following findings in support of my vocational assessment.

### Vocational Assessment Findings

## Personal Data:

Client:          Danette Fife
DOB:          11/8/1968

Attorney Michael Cefalo
September 25, 2014
Page - 4
Re:    Danette Fife

Current Age:          45-years/10-months as of 9/8/14
Address:              Harvey's Lake, PA 18618
Marital Status:       Divorced
Height:               5'4"
Weight:               145lbs
Dominant Hand:        Left Handed

## Medical History / Medical Status:

As part of my vocational assessment, I was able to review with Danette Fife general medical issues.

Danette Fife confirmed she has no current medical problems or conditions with diabetes, heart disease, or high blood pressure.

On 12/17/12, Danette Fife sustained injuries to her left shoulder, left foot, and mid and low back when she was struck by a minivan merging onto Pennsylvania Interstate Route 81.

Subsequently, Ms. Fife has undergone medical treatment by Chiropractor, Dr. Mark Morris, Family Physician, Dr. Gary Nothstein, Pain Management Physician, Dr. Joseph Paz, and Physiatrist, Dr. William Prebola specific to the injuries she sustained on 12/17/12.

Ms. Fife's medication regime involves Lexapro for anxiety and depression, and Flexoril for muscle spasms.

## Summary of Medical Records:

I have had the opportunity to review all available medical records and documentation.  I offer the following in support of my records review:

### Review of Medical Records - Lackawanna Ambulance (12/17/12):

Lackawanna Ambulance medical records confirm that Danette Fife was involved in a 12/17/12 motor vehicle accident causing her to sustain injuries to her neck and back, and requiring transport via ambulance to the Geisinger Wyoming Valley Hospital.

The vocational significance of the Lackawanna Ambulance records is the affirmation of causation specific to the 12/17/12 incident under review.

### Review of Medical Records - Geisinger Wyoming Valley (12/17/12):

Geisinger Wyoming Valley Hospital medical records reviewed confirm that Ms. Fife was transported via ambulance to the emergency room on 12/17/12 following a motor vehicle accident.

**Attorney Michael Cefalo**
**September 25, 2014**
**Page - 5**
**Re:     Danette Fife**

Ms. Fife underwent diagnostic testing and was discharged home on 12/17/12 with a diagnosis of cervical and back strain status post motor vehicle accident.

The vocational significance of the Geisinger Wyoming Valley Hospital records is the additional affirmation of causation specific to the 12/17/12 incident under review.

<u>Review of Medical Records - Chiropractic & Rehab Associates of Dallas (2/1/13-3/24/14):</u>

Medical records from Chiropractic & Rehab Associates of Dallas confirm that Danette Fife was seen for 45 sessions of chiropractic treatment post accident between 2/1/13 and 3/24/14. These chiropractic treatments occurred after the 12/17/12 accident under review.

Ms. Fife was treated by Chiropractors, Drs. Shawn Miller, and Dr. Mark Morris while participating in chiropractic treatments at Chiropractic & Rehab Associates of Dallas

Specifically, Danette Fife underwent modalities by Drs. Miller and Dr. Morris to her cervical, thoracic, and lumbar spine consisting of spinal manipulation, spinal adjustments, therapeutic exercises, interferential therapy, and electrical stimulation. The purpose of these modalities was to increase muscle strength, reduce fixation, increase mobility, and correct segmental dysfunction.

The vocational significance of Ms. Fife's chiropractic records is the affirmation that treatment was required and began after the 12/17/12 incident under review. Danette Fife confirmed that she had not needed or participated in chiropractic treatment prior to her 12/17/12 injuries.

<u>Review of Medical Records - Family Physician, Dr. Gary Nothstein (4/18/13):</u>

I was able to review a 4/18/13 medical office note from Danette Fife's Family Physician, Dr. Gary Nothstein.

Dr. Nothstein documented Ms. Fife's 4/18/13 symptoms as back and neck pain, right arm numbness, muscle aches, left ankle pain and swelling since the MVA (12/17/12), numbness in the right arm with twitching noted, numbness in bilateral legs since the 12/17/12 MVA, involuntary movements, sensory disturbances, limb weakness, difficulty with fine manipulative tasks, and motor disturbances.

Dr. Nothstein's medical impression was acute serous otitis media, cervical radiculitis, and left ankle injury. He recommended a cervical spine MRI, and x-rays of the left ankle.

The vocational significance of Dr. Nothstein's medical records is the affirmation that Ms. Fife has sustained multiple injuries and physical limitations as a direct result of the incident under review.

Attorney Michael Cefalo
September 25, 2014
Page - 6
Re:     Danette Fife

Review of Medical Report - Physiatrist, Dr. William Prebola (4/30/14 & 6/26/14):

Danette Fife underwent a medical evaluation by Physiatrist, Dr. William Prebola on 4/30/14.

Subsequent to his review of available records, and objective examination of Ms. Fife, Dr. Prebola offered the following medical impression:

1.  Motor vehicle collision of 12/17/12 causing:

    a.  Cervical disc herniation at C5-6, status post anterior cervical discectomy and fusion.
    b.  Right sided cervical radiculopathy.
    c.  Ongoing cervical/thoracic myofascial spasms.

Dr. Prebola verified that his 4/30/14 medical evaluation confirmed that Ms. Fife continues to have ongoing cervical spine impairment with residual right sided cervical radiculopathy as a sole result of the motor vehicle collision of 12/17/12.

Vocationally, Dr. Prebola offered the 4/30/14 opinion hat:

- I believe Danette Fife does suffer permanent partial impairment and permanent partial disability.
- I would place permanent restrictions in the sedentary to light duty work capacity level.
- She has a maximum lifting up to 15-20 lbs occasionally, and no greater than 5-10 lbs frequently.
- She needs to avoid future occupations that would include repetitive cervical twisting and bending activities.
- These restrictions are based solely on the motor vehicle collision of 12/17/12.

Overall, Dr. Prebola opined:

- Ms. Fife will never fully recover from the injuries sustained on 12/17/12.
- She can expect to have permanent pain and permanent symptomatology in the future.

Dr. Prebola tendered a 6/26/14 narrative report outlining Ms. Fife's future medical cost projections in conjunction with his 4/30/14 medical evaluation.

In regard to future medical treatment, Dr. Prebola opined that ongoing care including 24-36 chiropractic visits per year, pharmacological agents, trigger point injections, and 6-8 physician visits are reasonable in order to treat her cervical and thoracic injuries,

With regard to Ms. Fife's future medical condition, Dr. Prebola offered the 6/26/14 medical opinion that

Attorney Michael Cefalo
September 25, 2014
Page - 7
Re:     Danette Fife

- Ms. Fife can expect to have worsening of her cervical spine above and below the level of her cervical fusion at C5-6.
- In approximately 3-5 years, Ms. Fife can expect to have worsening of her physical abilities due to the fact that she has had the cervical discectomy and fusion.
- I believe she will progress to a state of total disability in that five year time frame.

The vocational significance of the medical opinions tendered by Board Certified Physiatrist, Dr. William Prebola is the affirmation of 1) causation specific to the 12/17/12 motor vehicle accident under review, and 2) permanent limitations that will progress to a state of total disability within a five year time frame (2019).

<u>Review of Medical Records - Pain Management Physician, Dr. Joseph Paz (5/10/13):</u>

Danette Fife was also evaluated by Pain Management Physician, Dr. Joseph Paz, on 5/10/13.

Dr. Paz documents within his 5/10/13 report that Danette Fife was involved in a 12/17/12 motor vehicle accident when she was hit head on by a driver who was going the wrong way on Interstate 81.

Dr. Paz noted Ms. Fife presented at her 5/10/13 examination with severe neck pain, right upper extremity pain, low back pain, as well as numbness and tingling in her arms, legs, and feet. Dr. Paz also noted that Ms. Fife described her pain as constant, aching, burning, and sharp.

Dr. Paz's medical impression was cervical radiculopathy related to cervical herniated nucleus pulposus, moderate cervical spinal stenosis, cervicalgia - neck pain, cervical facet syndrome.

Dr. Paz recommended cervical epidural steroid injections, a neurosurgical consult, soft cervical collar, and continue anti-inflammatory medication.

Vocational notice is taken specific to Dr. Paz's 5/10/13 opinion that Ms. Fife has 1) significant morning stiffness, 2) her pain is worse throughout the day and 3) sitting makes her pain worse.

The vocational significance of Dr. Paz's 5/10/13 medical opinion is the affirmation of 1) causation specific to the 12/17/12 MVA, and 2) the affirmation of multiple ongoing symptomatology that has led to constant pain that is worse throughout the day, and 3) sitting makes Ms. Fife's pain worse.

<u>Review of Medical Records - Neurosurgeon, Dr. Michel Lacroix (5/30/13-7/17/13):</u>

I was able to review medical records from Neurosurgeon, Dr. Michel Lacroix under the cover of 5/30/13 through 7/17/13.

Attorney Michael Cefalo
September 25, 2014
Page - 8
Re:     Danette Fife

Ms. Fife was evaluated by Dr. Lacroix on 5/30/13 for an evaluation of her cervical spine. Ms. Fife was experiencing increased neck pain and right upper extremity pain. Dr. Lacroix examined Ms. Fife, reviewed diagnostic studies and recommended she undergo surgical intervention.

On 6/15/13, Danette Fife underwent a cervical discectomy and fusion by Dr. Lacroix.

A 7/17/13 correspondence was tendered by Dr. Lacroix's PA-C, Alan Vannan to Ms. Fife's pre-injury employer, Pride Mobility. This correspondence allowed Ms. Fife to consider return to work, as long as she does not lift greater than 10-15lbs, and avoids deep bending and twisting.

Vocationally, I would note that Dr. Lacroix's restrictions limiting Ms. Fife to lifting no more than 10-15lbs, does not allow Ms. Fife to participate in a full range of light work.

**Physical Limitations:**

As part of my vocational assessment in this matter, I discussed with Danette Fife her physical limitations that have occurred as a direct result of the 12/17/12 accident. Ms. Fife described the following eleven limitations that she deals with on an ongoing basis:

- constant numbness in her right palm under her thumb.
- occasional numbness in the tips of her fingers on her right hand.
- constant left foot numbness and tingling.
- the need to move side to side while standing.
- an inability to stand beyond 20-minutes before needing to change positions.
- severe tightness in both her shoulders.
- increased low back pain after periods of walking.
- an inability to lift beyond 5lbs.
- an inability to sit beyond 20-30 minutes before needing to change positions between sitting and standing. Standing intervals will last 5-10 minutes.
- the need to move side to side while sitting due to low back and neck pain.
- increased pain and discomfort in her neck and low back with cold, wet, and/or humid weather conditions.

I have personally observed Ms. Fife's need to change positions at 20-minute intervals. During the course of our 7/7/14 2-hour and 15-minute in person vocational meeting, I observed Ms. Fife change positions between sitting and standing on an ongoing basis. I concurrently observed Ms. Fife's need to stand for 10-minute intervals.

**Family & Social Background:**

Danette Fife was born in Wilkes-Barre, PA on 11/8/1968.

Attorney Michael Cefalo
September 25, 2014
Page - 9
Re:     Danette Fife

Danette Fife was divorced as of September 2011.  Ms. Fife is the proud mother of three children ages 19, 11, and 8.  The Fife family has  resided at their Harvey's Lake location for the past 3-years.  Unfortunately, due to financial hardships, Ms. Fife and her family have moved to  new residence in the Harvey's Lake area in August 2014.

Ms. Fife was socially active prior to the 12/17/12 motor vehicle accident and described pre-injury hobbies to include time with her family, exercise, yoga, body building, cycling, roller blading, tough mudder races, portrait painting.  Ms. Fife reported no post injury hobbies.

Ms. Fife possess a valid PA Driver's license.

**Educational & Military Background:**

Danette Fife graduated from Dallas High School in 1986.  Ms. Fife attended West Chester University from 1989-1990, and The Art Institute of Philadelphia from 1992-1994.  Ms. Fife's field of study at The Art Institute of Philadelphia was Visual Communication - Marketing and Graphic Arts.  Ms. Fife confirmed she did not obtain a degree for West Chester University or the Art Institute of Philadelphia.

Danette Fife confirmed she has the ability to read and write.  However, Ms. Fife concurrently confirmed that downward neck flexion to utilize a keyboard will increase pain, and worsen pain symptoms in her neck and back as the day proceeds.

Ms. Fife confirmed during our 7/7/14 vocational assessment meeting that she has never participated in any branch of the United States Military.

**Vocational Background:**

As part of my vocational assessment, I was able to review with Danette Fife, her work experience.  Ms. Fife reported the following vocational profile:

- <u>12/10/12-Present</u>     Pride Mobility

Danette Fife began working for Pride Mobility as a full time accounts executive on 12/10/12.  Ms. Fife reported her annual salary as $27,500.00 plus commission.  Ms. Fife stated her monthly commission has averaged between $1,500.00 to $2,000.00.  Ms. Fife receives Geisinger healthcare benefits.

Job responsibilities include in house sales of Pride Mobility products which include electric wheelchairs, jazzes, and scooters.  Ms. Fife will use proprietary software and maintain sales contact with dealers and retail outlets.

Attorney Michael Cefalo
September 25, 2014
Page - 10
Re:    **Danette Fife**

Unfortunately, one week following her 12/10/12 date of hire Ms. Fife was injured in the motor vehicle accident of 12/17/12.

Multiple job accommodations including but not limited to 1) allowing for a 5 to 10 minute break to stand every 30-minutes, 2) use of an ergonomic keyboard, and 3) an orthopedic work chair have been made by Pride Mobility as Ms. Fife's employer.  Unfortunately, even with these job accommodations, Ms. Fife experiences daily pain that worsens as the day progresses.

- 2011 - 11/2012          During this time period, Ms. Fife made the choice that millions of American moms have made, and was at home with her children.

- 10/2006-5/2010          Snooty Fox Consignment

Danette Fife was the sole owner/operator of Snooty Fox Consignment between 2006 and 2010. This business was a local consignment shop focused on women's and children's clothing.  Ms. Fife managed a staff of 5 part time employees and marketed the business by word of mouth.  Ms. Fife viewed this work experience as a hobby during her married years.  This business concluded in 2010 because he business was not profitable.

- 1/2001-1/2006          AT&T Wireless

Danette Fife was employed as a full time Indirect Account Executive with AT&T Wireless from April 2001 through October 2006.  Ms. Fife reported earning a yearly income of $42,000.00 plus commission.

Ms. Fife described her job duties with AT&T Wireless as extensive traveling, indirect point of sales, training staff and vendors, supervising staff and presenting at trade shows 4-5 times per year.  Ms. Fife interacted with 52 AT&T locations and assisted with handling and resolving customer issues.  Ms. Fife confirmed that prior to the 12/17/12 motor vehicle accident, she met and exceeded her work goals.  Ms. Fife noted that her territory included northeastern New York, Northeastern-PA, Hazelton, Wilkes-Barre, and Philadelphia.  This position concluded in 2008 while Ms. Fife was married, and the family decision had been made for Ms. Fife to spend more time at home, and help raise her children.

Ms. Fife's supervisor, Pete, Uzups described Ms. Fife's work qualities with this employer as excellent.

(Source: 11/29/12 Job Reference from Supervisor Pete Uzups)

- 1997-2001          Omnipoint/Voicestream - T-Mobile

Danette Fife was employed as a full time Indirect Account Executive with Omnipoint Voicestream between January of 1995 and January of 2001.  Ms. Fife recalled her annual income as $32,000.00 plus commission.

Attorney Michael Cefalo
September 25, 2014
Page - 11
Re:     Danette Fife

Ms. Fife's job duties with Omnipoint/Voicestream involved training national account representations on company strategies and sales methods when new territories opened up.  Ms.

Fife interacted with approximately 50 staff members and provided point of sales services and supervision to eight states on the east coast with regard to merchandising and vendor relationships.  Employment with this employer continued without interruption following Omnipoints merger with Voice Stream - AT&T.

Ms. Fife's Supervisor, Bill Davis described Ms. Fife's work qualities with this employer as above average and excellent.

(Source: 11/29/12 Job Reference from Supervisor, Bill Davis)

**Activities of Daily Living:**

As is customary with each vocational assessment, I was able to review with Danette Fife her current activities of daily living.

Danette Fife confirmed during our vocational discussions that in addition to her full time work hours  she is able to cook, and clean.  However, Ms. Fife noted she will only accomplish her work and post work  activities at her own slow pace, and only as her comfort level dictates. Unfortunately, Ms. Fife confirmed that her pain symptoms worsened after activity, and are most painful at the end of the day .  Ms. Fife will often rest and relax during the night time hours to regroup for the next day.

Ms. Fife indicated that she relies on her children to help with laundry and grocery shopping.

**Transferable Skills Analysis:**

As is customary, a Transferable Skills Analysis was completed specific to Danette Fife's past work experiences.

Vocationally, past relevant work is primarily evaluated on employment within the most recent 15-year period.   Therefore, the positions considered within the VDARE process include Ms. Fife's work experience at -

- Pride Mobility -
    - Sales representative general merchandise - DOT# 279.357-014, SVP 5, Light exertional level, Skilled employment
    - Sales representative motorized vehicle and supplies - DOT# 273.357-022, SVP 5, Light exertional level, Skilled employment

**Attorney Michael Cefalo**
**September 25, 2014**
**Page - 12**
**Re:      Danette Fife**

- Snooty Fox Consignment -

    o Retail sales manager - DOT# 185.167-046, SVP 7, Light exertional level, Skilled employment

- AT&T Wireless Omnipoint/Voicestream -

    o Sales representative - telephone services - DOT# 253.257-010, SVP 6,Light exertional level, Skilled employment
    o Training instructor - 166.227-010, SVP 7, Light exertional level, Skilled employment

The first area evaluated within the Transferable Skills Analysis was Danette Fife's Specific Vocational Preparation level (SVP).  An individual's SVP level is defined by the amount of time required by a typical worker to learn the techniques, acquire information, and develop the skills needed for average performance in a specific work situation.

Danette Fife's average SVP level, level 6, indicates over 1-year up to and including 2-years as the typical time frame for an individual to develop average work skills.

Danette Fife's General Educational Development (GED) level was also evaluated next.  This evaluation embraces those aspects of education both formal and informal, which are required of a worker for satisfactory job performance.

Danette Fife has developed an average GED level (level 3) with regard to math skills and a slightly above average ability with regard to reasoning and language skills.

The VDARE process utilized within the Transferable Skills Analysis also confirms that Danette Fife has developed:

- Below average aptitudes with regard to eye/hand/foot coordination and color discrimination.
- Slightly below average aptitudes with regard to motor coordination, finger and manual dexterity.
- Average aptitudes with regard numerical skills, spatial perception, form perception, and clerical perception.
- Above average aptitudes with regard intelligence and verbal skills.

Danette Fife's past work experience has been performed in the light exertional level.  Light exertional work is defined as Lifting 20 lbs. maximum with frequent lifting/carrying of objects weighing up to 10 lbs.

Danette Fife's work history has required physical demands with regard to - occasional stooping, kneeling, crouching, and use of far acuity, depth perception, accommodation, color vision, and field of vision; occasional to frequent reaching, handling, fingering, as well as use of near acuity; frequent to constant talking and hearing.

Attorney Michael Cefalo
September 25, 2014
Page - 13
Re:     Danette Fife

Danette Fife's has developed work temperaments with regard to directing others, influencing people, making judgments, dealing with people, attaining tolerances, and performing a variety of duties.

Danette Fife has been exposed to noise intensity levels in her work environment at level 3, which is average.

**Vocational Conclusions:**

I have completed a review of all available historical documentation in this matter.   I have also completed an in person vocational assessment with Danette Fife on 7/7/14 and follow up vocational telephonic discussions on 8/1/14, 8/13/14, and 9/3/14.

My vocational efforts, in combination with vocational research and reliable and relevant vocational methodology were utilized in developing my vocational opinions in this matter.

It is my opinion within a reasonable degree of vocational certainty, that as a direct result of the 12/17/12 accident, Danette Fife has sustained an occupational disability.  I offer the following in support of my vocational opinion.

It is my opinion that no less than 5 medical examiners, 1) Chiropractors Dr. Miller and Dr. Morris, 2) Family Physician, Dr. Nothstein, 3) Physiatrist, Dr. Prebola, 4) Pain Management Specialist, Dr. Paz, and 5) Neurosurgeon, Dr. Lacroix, affirm causation and physical limitations for Danette Fife as a result of the 12/17/12 accident under review.

As an existing employee of Pride Mobility, Danette Fife has received multiple job accommodations from her employer.  Vocational  notice is taken regarding Pride Mobility's business focus of providing individuals in need, with handicapped accommodations via motorized wheelchairs.

Pride Mobility has specifically allowed Danette Fife to change positions at 30-minute intervals and walk and/or stand for 5-10 minutes in order to address ongoing pain symptomatology. During this 5-10 minute period, Danette Fife is off task.

As the fact finders are aware, pain management specialist, Dr. Joseph Paz has opined that sitting makes Mr. Fife's pain worse.  Pride Mobility has concurrently offered an orthopedic chair and accommodation regarding Ms. Fife's keyboard positioning.

Even though Ms. Fife received these multiple accommodations, she was placed under a probationary status between October 2013 an January 2014, due to missed time from work and her inability to maintain job expectations.

Attorney Michael Cefalo
September 25, 2014
Page - 14
Re:    Danette Fife

It is my opinion that Ms. Fife's permanent pain, permanent symptomatology and worsening condition has restricted her upward vocational mobility and career advancement potential as she currently attempts to sustain work.

It is my vocational opinion that in an alternate work setting, Ms. Fife may not be allowed the ongoing accommodation of time off from work tasks.  It is concurrently my vocational opinion, that in an alternate work setting, Danette Fife would be competing against able bodied individuals, in a labor market with a high unemployment rate.  Employer's in today's labor market are trying to accomplish "more with less".  This business philosophy results in employees being asked to accomplish more job tasks with less assistance.  Employers expect a persistence of work pace, consistent work attendance and the ability to generate results.

Ms. Fife is also aware of Dr. Prebola's 6/24/14 medical opinion that she can expect a worsening of her physical abilities due to her cervical discectomy and fusion and can concurrently expect her condition to deteriorate to the state of total disability within a 5-year time frame.

The opinions of Drs. William Prebola, Joseph Paz, and Michel Lacroix are specifically compelling from a vocational perspective and support my vocational findings in this matter.

On 7/17/13, Dr. Lacroix documented Ms. Fife's restrictions limiting her to lifting no more than 10-15lbs.  Vocationally, this is significant because these restrictions do not allow Ms. Fife to participate in a full range of light work.

Dr. Paz's 5/10/13 medical opinion affirms 1) causation specific to the 12/17/12 motor vehicle accident, 2) the affirmation of ongoing symptomatology that has lead to constant pain that is worse throughout the day, and 3) sitting makes Ms. Fife's pain worse..

On 4/30/14, Dr. William Prebola confirms his medical opinion that Ms. Fife has already experienced a permanent partial impairment and permanent partial disability:

- I believe Danette Fife does suffer permanent partial impairment and permanent partial disability.
- I would place permanent restrictions in the sedentary to light duty work capacity level.
- She has a maximum lifting up to 15-20 lbs occasionally, and no greater than 5-10 lbs frequently.
- She needs to avoid future occupations that would include repetitive cervical twisting and bending activities.
- These restrictions are based solely on the motor vehicle collision of 12/17/12.
- Ms. Fife will never fully recover from the injuries sustained on 12/17/12.
- She can expect to have permanent pain and permanent symptomatology in the future.

Attorney Michael Cefalo
September 25, 2014
Page - 15
Re:    Danette Fife

Overall, Dr. Prebola opined on 6/26/14 that Danette Fife will experience total disability:

- Ms. Fife can expect to have worsening of her cervical spine above and below the level of her cervical fusion at C5-6.
- In approximately 3-5 years, Ms. Fife can expect to have worsening of her physical abilities due to the fact that she has had the cervical discectomy and fusion.
- I believe she will progress to a state of total disability in that five year time frame.

The vocational significance tendered by Board Certified Physiatrist, Dr. William Prebola, is the affirmation of 1) causation specific to the 12/17/12 motor vehicle accident under review, and 2) permanent limitations and a permanent partial disability that will progress to a state of total disability within a five year time frame.

Dr. Prebola's 6/26/14 medical opinion offers a clear and specific foundation for Danette Fife experiencing a total occupational disability by the year 2019.

Danette Fife was born on 11/8/1968, and will therefore reach age 51 in 2019, at the time of her 51st birthday.

Individual's celebrating Ms. Fife's birth year of 1968 reach their full work life expectancy at age 67.

(Source: Social Security Administration - www.ssa.gov)

Therefore, it is my opinion that as a direct result of the 12/17/12 accident under review, Danette Fife will experience a total occupational disability and concurrent total loss of earning capacity, over a period of 16-years. This time represents a total occupational disability between age 51 and age 67.

**Impact on Earning Capacity:**

As part of my assessment of Danette Fife, I have reviewed Danette Fife's pre-injury earnings history between 1984 and 2012 as presented within her Social Security Earnings Profile.  I have also reviewed Ms. Fife's 2013 tax records and  2013 W-2 from her work with Pride Mobility.

As the fact finders are aware, Ms. Fife's ownership of the Snooty Fox Consignment Shop between October of 2006 and May 2010 was in reality a hobby.  This was not an employment experience that Ms. Fife participated in to earn a profit.  During this time in Ms. Fife's life she was married, and the Fife family was able to live off Mr. Fife's annual earnings.

Ms. Fife re-entered the work force in December of 2012, when she initiated work with Pride Mobility.

Attorney Michael Cefalo
September 25, 2014
Page - 16
Re:    Danette Fife

The demonstrated earnings profile for Ms. Fife between 2007 and 2012 shows zero earnings or minimal earnings during those work years.

I have therefore evaluated Danette Fife's demonstrated earning capacity during  the three full work years, prior to her 2007 departure from the competitive work force.  My vocational review of Ms. Fife's earning profile as documented in her Social Security Earnings History confirms the following:

- $51,328.00 - 2004 Annual Earnings Per Social Security Earnings History
- $56,002.00 - 2005 Annual Earnings Per Social Security Earnings History
- $42,726.00 - 2006 Annual Earnings Per Social Security Earnings History

This earnings profile presents objective confirmation of Danette Fife's pre-injury demonstrated average annual earning capacity of $50,018.00.  This demonstrated average annual earning capacity is based specifically on Ms. Fife's annual earnings over the three year period of 2004, 2005, and 2006.

Ms. Fife's 2013 W-2 tax statement objectively confirms an annual earned income of $30,831.00. As the fact finders are aware, Ms. Fife's 2013 earnings were interrupted by 6/15/13 cervical surgery and post surgical recuperation.

Currently, Danette Fife confirms that her work with Pride Mobility has a base salary of $27,500.00 annually, and Ms. Fife is earning $1,500 to $2,000 in bonus income.

Projected over a course of a full work year, Ms. Fife's monthly bonus income annualizes to a range of $18,000.00 per year ($1,500 x 12-months) to $24,00.00 per year ($2,000 per month x 12-months).  Therefore it is my opinion that Danette Fife's current demonstrated annual earning capacity presents in a  range between $45,000.00 to $51,000.00 per year. This earning capacity is in harmony and consistent with Danette Fife's pre-injury demonstrated earning profile.

Specifically, to the overall impact of the 12/17/12 motor vehicle accident on Danette Fife's future vocational and economic horizons, I offer the following.

* Danette Fife's diminished earning capacity based on her total occupational disability status at age 51.

An individuals earning capacity is defined as  a person's ability or power to earn money given the person's talent, skills, training, and experience.

(Source:  Forensic Rehabilitation Consultants - Elliot & Fitzpatrick 2005)

Attorney Michael Cefalo
September 25, 2014
Page - 17
Re:     Danette Fife

Although Ms. Fife's current earning potential based on her base income and bonus income ranges between $45,000 and $51,000 per year, I have conservatively utilized Ms. Fife's pre-injury demonstrated earning capacity for the purposes of this assessment.

Specifically, I have utilized Danette Fife's pre-injury demonstrated average annual earnings of $50,018.00.  This average annual income is demonstrated objectively by Ms. Fife's 2004, 2005, and 2006 pre-injury earnings.

Significant age milestones in this assessment confirm that Ms. Fife was 44-years and 1-month old at the time of the 12/17/12 motor vehicle accident and is currently 45-years and 10-months old.

My vocational research confirms that individuals celebrating Ms. Fife's birth year (1968) reach their full work life expectancy at age 67-years/0-months.

(Source: Social Security Administration – www.ssa.gov)

Vocational consideration has been given to Dr. William Prebola 6/24/14 medical opinion confirming that Ms. Fife has permanent pain, permanent symptomatology, and can expect worsening of her conditioning until she reaches a total occupational disability status within a 3 to 5 year period.

Based on Ms. Fife's demonstrated average annual earnings of $50,018.00 and a diminished work life expectancy of 15-years between age 51 and age 67, it is my opinion that Ms. Fife will experience a total anticipated loss of future earning capacity in the amount of $800,288.00.

This wage calculation considers an annual loss of earning capacity of $50,018.00 x 16-years. Specifically, this wage calculation considers uninterrupted participation in the work force between  age 51 through age 67.

I would highlight for the fact finders in this matter that:

- Wage calculations are conservative as they do not consider Ms. Fife's permanent symptomatology permanent pain, and worsening condition during the next 5-years leading up to total disability status, which may decrease her earnings over the next 5-years.
- Wage calculations are conservative as they do not consider an increase in annual base pay, an increase in overtime income, commission income, bonus income, or the need to pay ancillary benefits including individual or family healthcare benefits.
- Wage calculations are also conservative as they are presented in present day dollar value and not adjusted  for inflation.

Attorney Michael Cefalo
September 25, 2014
Page - 18
Re:     Danette Fife

As always, I would respectfully reserve the right to review any future documentation in this matter should developments warrant.

I have offered each of my opinions in this assessment within a reasonable degree of vocational certainty.

This concludes my vocational assessment specific to the matter of Danette Fife.

Sincerely,

Sean C. Hanahue, MA, CDMS, CRC, BCPC, ABVE
President/Director of Rehabilitation Services
PA Advocates Inc.

Enclosures: 1) Scenario I Worksheet - 1 Page
            2) Definition of Work Demands - 1 Page
            3) Curriculum Vitae - Sean C. Hanahue, MA, CDMS, CRC, BCPC, ABVE - 8 Pages


*SCH/sp*

Attorney Michael Cefalo
September 25, 2014
Page - 18
Re:    Danette Fife

As always, I would respectfully reserve the right to review any future documentation in this matter should developments warrant.

I have offered each of my opinions in this assessment within a reasonable degree of vocational certainty.

This concludes my vocational assessment specific to the matter of Danette Fife.

Sincerely,

Sean C. Hanahue, MA, CDMS, CRC, BCPC, ABVE
President/Director of Rehabilitation Services
PA Advocates Inc.

Enclosures: 1) Vocational Worksheet - 1 Page
             2) Definition of Work Demands - 1 Page
             3) Curriculum Vitae - Sean C. Hanahue, MA, CDMS, CRC, BCPC, ABVE - 8 Pages

*SCH/sp*

1

Claimant:     **Danette Fife**
D.O.B.:       **11/8/1968**
D.O.I.:       **12/17/2012**

**Danette Fife's diminished earning capacity
based on her total occupational disability status at age 51.**

I.     **EARNING CAPACITY**: A person's ability to earn money given the person's talent, skills, training, and experience .

       (Source: Forensic Rehabilitation Consultants - Elliot & Fitzpatrick 2005)

II.    **WORK LIFE EXPECTANCY (WLE)  – is defined as the total number of years in aggregate that an individual is  likely to be alive and employed:**

       | | | |
       |---|---|---|
       | Age at time of accident | – | 44-years/1-month |
       | Current Age as of 9/8/14 | – | 45-years/10-months |
       | Full Work Life Expectancy (WLE) | – | 67-years/0-months |
       | Remaining Work Life Expectancy (WLE) After | | |
       | Age 51 and Total Occupational Disability to Age 67 | – | 15-years/0-months |

       (<u>Source</u>: Medical Opinion - Dr. William Prebola 6/24/14))

III.   **PRE-INJURY DEMONSTRATED AVERAGE ANNUAL INCOME (3-YEARS):**

       $50,018.00 –  This wage calculation considers Ms. Fife's 3-year pre-injury average annual demonstrated earned income between 2004, 2005, and 2006

IV.    **TOTAL ANTICIPATED LOSS OF FUTURE EARNINGS - 16-YEARS:**

       $800,288.00 – This wage calculation considers a lost annual earning capacity of $50,018.00 x 16-years. Specifically, this wage calculation considers the time frame between Age 51 and Age 67. ($50,018.00 annual loss x 16-years = $800,288.00)

       *Wage calculations are conservative as they do not consider Ms. Fife's permanent symptomatology, permanent pain, and worsening condition during the next 5-years leading up to total disability status.

       *Wage calculations are conservative as they do not consider an increase in annual base pay, an increase in overtime income, commission income, bonus income, or the need to pay ancillary benefits including individual or family healthcare benefits.

       *Wage calculations are also conservative as they are presented in present day dollar value and not adjusted  for inflation.

## DEFINITION OF WORK DEMANDS

Following are descriptions of the five terms in which the Strength Factor is expressed.

**S-Sedentary Work** – Exerting up to 10 pounds of force occasionally. (Occasionally: Activity or condition exists up to 1/3 of the time) and/or negligible amount of force frequently (Frequently: Activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other criteria are met.

**L-Light Work** – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: Activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work. (1) When it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

**M-Medium Work** – Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Light Work.

**H-Heavy Work** – Exerting 50-100 pounds of force occasionally, and/or 25-50 pounds of force frequently, and/or 10-20 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Medium Work.

**V-Very Heavy** – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical demand requirements are in excess of those for Heavy Work

## DEFINITION OF EARNING CAPACITY

**Earning Capacity:** Earning capacity can be defined as the level of income in which an individual may be reasonably expected to receive from work, given that individual's age, level of educational attainment, particular skills and talents, actual earnings and work history, intentions, and the supply and demand of conditions in the labor market relative to the individual's realistic employment choices. It should be noted that the realization of earning capacity may be a function of both economic and non-economic factors.